JPL:CC/AK
F.#2010R00123

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

                                10-CR-068 (SJ)(SMG)

KATOSH PANTOLIANO,

          Defendant.

- - - - - - - - - - - - - X


THE GOVERNMENT'S MEMORANDUM OF LAW IN FURTHER OPPOSITION
<u>TO DEFENDANT'S MOTION TO SUPPRESS IDENTIFICATION EVIDENCE</u>


                                         LORETTA E. LYNCH
                                         UNITED STATES ATTORNEY
                                         EASTERN DISTRICT OF NEW YORK

Ali Kazemi
Celia A. Cohen
Assistant U.S. Attorneys
    (Of Counsel)

<u>PRELIMINARY STATEMENT</u>

The defendant, Katosh Pantoliano, is charged in an indictment with (1) two counts of Hobbs Act robbery conspiracy in violation of Title 18, United States Code, Section 1951(a), (2) one count of Hobbs Act robbery in violation of Title 18, United States Code, Section 1951(a), and (3) two counts of unlawful use of a firearm in violation of Title 18, United States Code, Section 924(c).  The charges arose from the defendant's participation in a series of armed robberies of narcotics traffickers and gambling establishments located in Brooklyn and Staten Island between April 2008 and September 2008, and the defendant's participation in an armed robbery of a restaurant owner in Brooklyn on September 28, 2009.

By written motion dated May 19, 2010, the defendant moved to suppress (1) show-up identifications of the defendant by two witnesses, in connection with the September 28, 2009 robbery, and (2) photographic identifications of the defendant by two witnesses, in connection with the series of armed robberies between April 2008 and September 2008 ("Def. Motion").  The government opposed the defendant's motion in a brief filed on March 5, 2010.  A hearing on the defendant's motion was held on October 18, 2010, during which the Court heard testimony from Alcohol, Tobacco, Firearms and Explosives Special Agent Ayesha Winston.

On November 10, 2010, the defendant submitted a post hearing brief ("Def. Post-Hearing Brief"), arguing that both show-up identifications should be suppressed, and that the government should be precluded from eliciting any in-court identification of the defendant.  The defendant does not challenge the photographic identifications in his Post-Hearing Brief, and the government does not address the issue below. However, the evidence adduced at the October 18, 2010 hearing demonstrates that the photographic identifications are admissible.  Additionally, the evidence adduced at the hearing established that, based on the totality of the circumstances, the show-up identifications of the defendant by both witnesses should be admissible at trial.  Accordingly, the defendant's motion should be denied in its entirety.

<u>STATEMENT OF FACTS</u>

During the October 18, 2010 hearing, the government elicited testimony from Agent Winston, who was the case agent on the robberies for which the defendant was charged.  Tr. 14.[1] With respect to the September 28, 2009 "show up" identifications, the testimony of Agent Winston established the following facts:

At approximately 8:30 p.m. on September 28, 2009, a part-owner of a diner restaurant (the "victim") walked out of his

_____

[1]      "Tr." refers to the transcript from the October 18, 2010 hearing.

3

business and saw a man standing near his car on Ovington Avenue in Brooklyn, New York.  Tr. 28-30.  The man pulled a mask up over half of his face and walked towards the victim with a gun in his hand.  Tr. 30.  As the man approached the victim he said, "give me the fucking knot."  Id.  Although it was evening, the area had street lamps and the victim stated that he could see the man. Id.  The victim described the robber as having a slim build, weighing approximately 150 to 160 pounds and wearing a grey or light-colored hooded sweatshirt.  Tr. 31, 57.  The victim gave the robber $1,080, and the robber then turned around, walked back towards Third Avenue and discharged the firearm.  Id.  At that time, someone called 911, and shortly thereafter the police arrived at the scene.  Tr. 31.

Detective Soto, a Spanish-speaking detective with the New York City Police Department ("NYPD"), interviewed a witness who was present near the scene of the robbery (the "eye-witness").  Tr. 33.  The eye-witness, who only speaks Spanish, told Detective Soto that he was taking the garbage out from the business where he works on Third Avenue when he heard a firecracker sound.  Id.  He then saw a white male of thin stature wearing a gray or light-colored hooded sweatshirt holding a gun in his hand.  Tr. 33, 59.  The witness saw the man's face.  Tr. 70.  The man entered a car that was driven by another individual whom the witness also described.  Tr. 33.  The eye-witness wrote

4

down the license plate of the car and gave it to the NYPD
detectives investigating the robbery.  Tr. 34.  The eye-witness
made these observations in a well-lit business area.  Tr. 35.

        Based on this information, NYPD officers and detectives
located the owner of the getaway car and went to the owner's
home.  Tr. 35-36.  The car owner told the officers that he had
lent his car to Anthony Tuozzo ("Tuozzo" or the "getaway
driver").  Tr. 36.  Thereafter, NYPD Officer Camillo and his
partner went to the residence of Tuozzo on Battery Avenue in
Brooklyn.  Tr. 37.  Upon their arrival, they located the getaway
car and requested additional units at the scene.  Tr. 36-37.
Officers Fresnetta and Estevez responded to the request for units
and drove down Battery Avenue, a dead-end street, past Tuozzo's
residence, at which point they observed two individuals.  Tr. 37.
The officers asked the individuals to stop, and one of them tried
to duck behind a car.  Tr. 38.  The two individuals emerged when
they were told over the loud speaker to show themselves and they
produced identification.  Id.  The individuals were identified as
the defendant and Tuozzo.  Tr. 37-38.  The officers observed that
the description of the robber provided over the NYPD radio run
matched that of the defendant, and the officers also recognized
the name "Tuozzo" as the individual to whom the car owner stated
that he had lent his car.  Tr. 38-39.  The officers then radioed
the detectives that they had stopped two individuals.  Tr. 38.

After the defendant and Tuozzo were identified, the
detectives brought the victim and eye-witness to Battery Avenue,
where the getaway car was located and where the defendant and
Tuozzo were stopped.  Tr. 39.  The victim and eye-witness were
driven to the scene by Detective Soto.  Detective Soto informed
the victim in English, and the eye-witness in Spanish, that they
had stopped some individuals, and wanted to see if the victim or
eye-witness could identify the individuals as the perpetrators of
the robbery.  Tr. 40-41.  The victim and the eye-witness were not
fluent in the same language; the victim did not speak Spanish,
and the eye-witness did not speak English.  Tr. 41.  The victim
and eye-witness were seated in the back of the police vehicle.
Tr. 41-42.

As they arrived at the scene, Detective Soto rolled
down the window so that the victim and eye-witness could observe
the men who were stopped.  Tr. 41.  The street was illuminated
with street lights, in addition to the headlights from the police
car.  Tr. 43.

The victim was not able to positively identify the
defendant's face, but confirmed that the defendant was of the
same build, and was wearing the same clothes, as the person who
robbed him at gunpoint.  Tr. 43, 45.  The victim identified
Tuozzo as someone whom he previously knew, but did not identify
him as a person whom he had observed during the course of the

6

robbery.  Id.  When the victim made his identifications, he spoke in English.  Tr. 45.

The eye-witness identified the individuals in Spanish. Tr. 44-45.  Specifically, the eye-witness identified the defendant as the individual whom he observed getting into the getaway car and carrying a gun in his hand, based on his face. Tr. 46.  The eye-witness identified the defendant without hesitation.  Id.  He also identified the other individual as the getaway driver, whom he further recognized as being a regular patron at the place where he worked.  Tr. 44-45.

The show up identification lasted approximately two to three minutes and occurred about an hour and a half after the robbery.  Tr. 46, 55.  During the show-up, neither the defendant nor Tuozzo were handcuffed, and they were standing side by side surrounded by plain-clothes officers.[2]  Tr. 42, 65.

After the identification, the defendant and Tuozzo were searched.  Tr. 46.  The officers found over $700 on Tuozzo's person, and a little over $300 on the defendant's person.  Tr. 47.  This total differed from the total take from the victim by

_____

[2]    On cross-examination, Agent Winston was questioned about her report from the eye-witness's August 24, 2010 statement, marked 3500 AW-7.  In that report, the witness stated that one of the individuals was lying across the car and one was by the passenger door.  Agent Winston subsequently testified, however, that during the last meeting with the eye-witness, on August 31, 2010, the eye-witness stated that he had not been telling the truth regarding his identification of the robber because he was afraid.  Tr. 77-78; 47-48.

$16.  Id.  The officers also found three masks inside the car.
Id.

       After the defendants were arrested, the eye-witness was
served with a Grand Jury subpoena.  Tr. 47.  The eye-witness then
became uncooperative and said that he did not see anything on the
night of the robbery.  Tr. 47-48.  On August 31, 2010, during an
interview with Special Agent Winston, the eye-witness admitted
that he previously felt threatened after the robbery, when two
men in a car came by his place of work.  Id.  He then confirmed
his initial identification of the defendant as the person he saw
with the gun on September 28, 2009.  Tr. 48.

ARGUMENT

       As set forth below, the evidence adduced at the hearing
demonstrates that the show-up identification should be
admissible.  Given the totality of the circumstances, the show-up
was not "unduly suggestive" and, in any event, the show-up was
"independently reliable."

I.   Applicable Law

       At a suppression hearing, the government has the burden
of proving, by a preponderance of the evidence, that the evidence
should not be suppressed.  See United States v. Matlock, 415 U.S.
164, 178 n.14  (1974)(citing Lego v. Twomey, 404 U.S. 477, 488-89
(1972)).  Where a witness has made a pretrial identification, a
challenge to that identification triggers an inquiry into whether

8

the pretrial identification procedure was "unnecessarily suggestive." United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990). A prior identification must be excluded only if it is "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." United States v. DiTommaso, 817 F.2d 201, 213 (2d Cir.1987) (quoting Stovall v. Denno, 388 U.S. 293, 302 (1967)). If the identification procedure is found not to be unnecessarily suggestive, the challenge fails and the reliability of the identification is a question only for the jury. Jarrett v. Headley, 802 F.2d 34, 42 (2d Cir. 1986). Furthermore, even if the identification procedure was unduly suggestive, the identification testimony is nevertheless admissible if it is "independently reliable." Maldonado-Rivera, 922 F.2d at 973.

II.   The Show-up Identification Was Not Unduly Suggestive

The analysis of whether a show-up identification is unnecessarily suggestive focuses solely on the procedure employed in connection with the challenged identification, including the necessity of that procedure under the circumstances. See Neil v. Biggers, 409 U.S. 188, 197 (1972); United States v. Tortora, 30 F.3d 334, 338 (2d Cir. 1994). A show-up identification is permissible where there are "extenuating circumstances." United States v. Concepcion, 983 F.2d 369, 377 (2d Cir. 1992). Indeed, as the Second Circuit has observed, "[w]hile one-man show-ups

9

present obvious dangers, we have held that if conducted shortly after the crime they are not necessarily improper." United States ex rel. Frasier v. Henderson, 464 F.2d 260, 264 (2d Cir. 1972); Stovall v. Denno, 388 U.S. 293, 295, 302 (1967) (show-up identification of handcuffed defendant who was the only black man in the room not unduly suggestive where there was a possibility the witness might die); United States v. Bautista, 23 F.3d 726, 730 (2d Cir. 1994) (show-up identification of handcuffed defendant in police custody whose face was lit by flashlights was not unduly suggestive where defendants were arrested during nighttime narcotics raid); United States v. Sanchez, 422 F.2d 1198, 1199-200 (2d Cir. 1970) (show-up identification admissible where police drove suspects to scene of the crime, shortly after arrest, in order to be identified by witnesses); Michaels v. Portuando, 99 CV 3195, 2002 WL 1732813, at *7-*8 (E.D.N.Y. July 23, 2002) (Gleeson, J.) (show-up identification of handcuffed defendant who was driven to crime scene to be identified by several witnesses standing together was not unduly suggestive where show-up was prompt, occurred in close proximity to crime, witnesses gathered less than five minutes after shooting and witnesses volunteered that defendant was the shooter); Reese v. Alexander, 99 CV 906, 2000 WL 1897292, at *1-*2 (E.D.N.Y. Nov. 14, 2000) (Weinstein, S.J.) ("The show-up took place almost immediately after the crime while petitioner was in the car used

in the crime.  The exigencies of the moment warranted that
show-up.  Given the weapon allegedly used and the danger to the
community, it was important to determine at once if the police
had apprehended the perpetrators so that they could be
arrested."); McBride v. Senkowski, 2002 WL 523275, at *5-6
(S.D.N.Y. Apr. 8, 2002) (Mukasey, J.) (show-up identification
which took place over two hours after robbery, with suspects
surrounded by officers, was not unduly suggestive);  United
States v. Ortiz, 99 CR 532, 2000 WL 37998, at *1 (S.D.N.Y. Jan.
18, 2000) (Chin, J.) (show-up identification of two handcuffed
defendants standing by a marked police car with uniformed
officers nearby was not unduly suggestive where police were
making a prompt effort to identify the perpetrators and release
the innocent); Corchado v. Rabideau, 576 F.Supp.2d 433, 450
(W.D.N.Y. 2008) ("The fact that the show-up occurred within
thirty minutes of the shooting and in reasonably close proximity
to the scene of the crime favors a finding that the procedure was
not unduly suggestive and was, instead, the product of effective
police work.").

> A.   Extenuating Circumstances
>      Required a Show-Up Identification

Here, the facts elicited at the hearing demonstrate
that the show-up identification was proper under the totality of
the circumstances.

First, the show-up was necessary to protect the community by facilitating a prompt arrest, particularly given the fact that a firearm was used, and discharged, during the commission of a violent crime.  In Alexander, Judge Weinstein held that a show-up identification was warranted where it took place almost immediately after a street robbery, while the perpetrator was in the car used during the commission of the crime.  Additionally, Judge Weinstein noted that the defendant used a sword, a weapon that posed a danger to the community, and it was therefore important to immediately determine if the police had apprehended the perpetrators so that they could be arrested. Id. at 2000 WL 1897292, at *1-*2.

In this case, the exigent circumstances warranting a show-up identification were even greater than those present in Alexander.  First, the defendant here used a loaded gun, and not a sword, during the commission of the offense.  Second, the defendant further demonstrated that he posed a grave danger to the community by firing a live round from his gun, in the middle of a busy public street, during the commission of the armed robbery.  Finally, the defendant's gun had not been recovered at the time of the show-up identification.  Under these circumstances, it was absolutely critical for the police to confirm, as soon as possible, whether they had apprehended the

actual perpetrators, or whether other armed perpetrators were
still at large.

Second, the show-up identification was conducted within
an hour and a half of the robbery, and immediately after the
suspects were located near the getaway car. Tr. 39, 55. The
defendant argued that the hour and a half between the robbery and
the show-up allowed ample time for the officers to set up a line-
up. Def. Post-Hearing Brief at 2. But the defendant fails to
recognize that the show-up occurred immediately after the
officers stopped and identified the defendant and getaway driver.
Tr. 39. The robbery took place at 8:30 p.m. Tr. 28. The police
subsequently arrived at the scene in response to a 911 call. Tr.
28-31. The police proceeded to interview the victim and the eye-
witness, and then went to the car owner's home. Tr. 34-36. Upon
speaking with the car owner, two officers drove to the getaway
driver's residence, where they found the car. Tr. 36-37. The
officers then called for back-up, at which time two more officers
arrived at the scene and eventually found the defendant and
Tuozzo. Tr. 37-38. Once the police found them, they asked for
identification and then radioed the other officers to inform them
that they might have the robbers. Tr. 38. The victim and the
eye-witness were then driven to the scene and they arrived at
approximately 9:20. Tr. 39. Accordingly, far less than an hour
and a half passed between the time the officers stopped the

defendant and the time that the officers arranged for the show-up.  Indeed, the facts demonstrate that (1) the police officers acted efficiently and expeditiously at all stages of the investigation, and (2) the show-up identification took place immediately upon locating the suspected armed robbers on a city street, which did not allow any time for the officers to conduct a line-up.

        In circumstances such as these, courts have recognized the benefits of conducting a show-up identification, which ensures prompt identification of the perpetrators.  For example, in Corchado, the court found that the show-up identification shortly after the shooting and in an area not far from the shooting was necessary to ensure that the officers had found the correct individual before the trail had grown cold.  576 F.Supp. 2d at 450.  There the court stated that, "since the alternative of a formal line up would have required transporting petitioner to the precinct and securing the presence of an appropriate number of 'fillers' who had characteristics similar to him, it would necessarily have taken hours to arrange.  Id.  In such circumstances, "prompt confrontation [is] desirable because it serve[s] to insure 'the immediate release of an innocent suspect and at the same time [to] enable the police to resume the search for the fleeing culprit while the trail is still fresh.'"  Id.  Likewise, the identifications here took place immediately after

14

the suspects were found in an area not far from the robbery and,
as in <u>Corchado</u>, if the police had the wrong suspects it would
have been necessary for them to resume their search for the
culprits while the trail was still fresh.

      B.   The Identification Procedures Employed Were Not
         <u>Unduly Suggestive Under the Circumstances</u>

     The manner in which the show-up was conducted was not
unduly suggestive.  Neither the defendant nor the getaway driver
were secured by handcuffs, and they were standing side by side.
Tr. 42.  Further, courts have held that even in circumstances
where the defendants were handcuffed and surrounded by police
officers in uniform, the show-up identification was not unduly
suggestive.  For example, in <u>Bautista</u>, the Court held that a
show-up identification was not unduly suggestive even though the
defendant was in handcuffs in the custody of police officers, at
night, with his face lit by flashlights.  <u>Bautista</u>, 23 F.3d at
730.  Similarly, in <u>Ortiz</u>, the Court held that a show-up
identification was not unduly suggestive, although the defendant
was in handcuffs, standing beside a marked police car and
accompanied by uniformed police officers.  2000 WL 37998, at *1-
2.  And, in contrast to both <u>Bautista</u> and <u>Ortiz</u>, here the
defendant and the getaway driver were <u>not</u> handcuffed, <u>nor</u> were
they surrounded by police in uniform.  Tr. 65.  If the courts in
<u>Ortiz</u> and <u>Bautista</u> found that the show-up identifications were
not unduly suggestive, certainly the show-up here should not be

15

considered unduly suggestive, where the circumstances of the suspects' detention were far less visible to the victim and eye-witness.

Moreover, although the victim and the eye-witness were together in the police car during the show-up, the fact that they could not communicate with one another eliminated the danger that their recollections may have influenced the other. Contrary to the defendant's suggestion, there was no testimony that the police car in which the victim and eye-witness sat had a police radio turned on. Def. Post Hearing Brief at 3. But even if the police radio was turned on, only the victim, and not the Spanish speaking witness, may have been able to understand what was said on the radio. Notably, police radio runs are transmitted in police code words that are not readily understood by a lay person. Accordingly, even if the victim was in a position to listen to the police radio while seated in the vehicle, it is unlikely that he would have understood the nature of the coded radio runs, if any, being transmitted.

Finally, the fact that the victim could not identify the defendant by his face further demonstrates that the show-up was not unduly suggestive. Tr. 43. The victim in this case had more of an incentive to identify the man who robbed him than the disinterested eye-witness. Yet, it was only the eye-witness who positively identified the defendant by his face. Tr. 46.

Specifically, the victim was not able to conclusively identify the defendant, despite the fact that the defendant was standing with an individual whom the victim knew personally.  Tr. 43. Moreover, the victim, as an English speaker, was the only individual who would have been in a position to hear any possible radio reports, which evidently did not influence him in his identification of the defendant.  Nor  did the eye-witness's identification influence the victim's identification, notwithstanding the fact that the eye-witness identification was made in a language that the victim does not speak.  Tr. 44.  Had the victim been unduly influenced by these factors, he would have positively identified the defendant beyond the general description given at the scene of the robbery.

III. The Show-up Identification Was Independently Reliable

Even if the Court were to find that the identification procedure was unduly suggestive, identification testimony should be admissible.  It is well-settled that the remedy for an identification of a suspect through unduly suggestive procedures is not an automatic exclusion of identification testimony. Biggers, 409 U.S. at 199.  If the procedure was unduly suggestive, the identification testimony will nevertheless be admissible if the government proves, by clear and convincing evidence, that under the totality of the circumstances the identification was

17

independently reliable.  Id.; United States v. Wade, 388 U.S. 218, 240 (1967).

In determining whether the show-up was independently reliable, the Court must consider various factors, including: . (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.  Id. at 199-200.  A good or poor rating with respect to any one of these factors is generally not dispositive. United States v. Mohammed, 27 F.3d 815, 821 (2d Cir. 1994) (citing Concepcion, 983 F.2d at 378); United States v. Butler, 970 F.2d 1017, 1021 (2d Cir. 1992) (identification independently reliable even though suspects were brought to victim who was sitting in a police car), 113 S.Ct. 480, 121 L.Ed.2d 386 .

Here, even if the Court were to determine that the procedure used was unduly suggestive, the victim and eye-witness identifications were still reliable because all five factors are satisfied.

First, both the victim and the eye-witness had sufficient opportunity to observe the defendant's appearance closely.  The victim first noticed the defendant standing by his car, and when the defendant demanded the victim's money, the

victim found himself face-to-face with the defendant.  Tr. 28-30.
Although the victim could not observe the defendant's face hidden
by the mask, the victim was still able to provide a description of
the defendant's light-grey sweatshirt, his weight and his build.
Tr. 31, 57.  In addition, the eye-witness saw the defendant's face
from close range.  In fact, the eye-witness's observations were so
reliable that he not only clearly observed the faces of both the
defendant and the getaway driver, but he also was able to
accurately record the entire license plate number of the car that
he observed the defendant entering.  Tr. 33-34.  Both the victim
and the eye-witness made these observations on a street that was
well-lit with street lamps.  Tr. 35.

        Second, both the victim and the eye-witness were paying
close attention when they observed the defendant.  The victim was
being robbed at gun-point and was forced to hand over his money to
the defendant.  Tr. 30.  Given the circumstances, the victim had
no choice but to pay attention.  Similarly, although not a victim
himself, the eye-witness was a particularly observant bystander.
The eye-witness actually had the presence of mind to write down
the exact license plate number of the getaway car, which led the
police directly to the defendant.  Tr. 34-37.  There is no
question that the eye-witness was paying close attention to the
defendant, given that he was able to accurately record the license
plate number of the car that the defendant entered.

19

The third factor is also satisfied because the description of the robber by the victim and the eye-witness matched the defendant at the show-up.  The victim identified the robber as a thin white male, about 150-160 pounds, wearing a light grey hooded sweatshirt.  Tr. 31, 57.  The eye-witness also identified the defendant as a thin white male wearing a light grey hooded sweatshirt.  Tr. 33, 59.  Those descriptions precisely matched the defendant.  Tr. 43, 45.

Fourth, the eye-witness, who saw the defendant's face at the scene of the robbery, did not hesitate when he identified the defendant.  Tr. 46.  The eye-witness's immediate and confident identification of the defendant as the gunman, combined with the fact that the eye-witness had no motivation to falsely identify the defendant as the perpetrator, renders the overall show-up identification reliable in and of itself.

Lastly, the fifth factor was satisfied because the show-up occurred an hour and a half after the robbery, and even more importantly, occurred immediately after the police officers stopped the defendant.  During the interim period, the victim's memory remained fresh, because he was asked to provide a description of the robber to investigation officers.  Similarly, the eye-witness' memory was fresh given the descriptions he provided of both the robber and the getaway driver to the police, as well as the vehicle's full license plate number.  Thus, there

was only a short period of time between the victim and eye-witness' statements to the police and the show-up identification, and therefore their memories of the defendant were still fresh in their minds.

Although it is unnecessary that all five factors be satisfied to render a show-up identification independently reliable, in this case, all five factors were satisfied. Accordingly, the show-up identifications of the defendant are more than sufficiently independently reliable.

IV.   **Even if the Show-Up Identification is Suppressed, the Government Should Be Permitted to Elicit In-Court Identifications of the Defendant**

Even if one or both of the out-of-court identifications are suppressed, the government should be permitted to elicit in-court identifications of the defendant by both the victim and the eye-witness.  The determination of the victim's and eye-witness's abilities to identify the defendant in court is for the jury to weigh, as long as there is not a substantial likelihood of misidentification.  Manson v. Brathwaite, 432 U.S. 98, 117 (1977) ("We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill.  Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.").

Because, as set forth above, the <u>Biggers</u> factors demonstrate the victim and eye-witness had ample opportunity to view the defendant close in range and in a well-lit area, in-court identifications by the victim and witness should be admissible. During trial, the victim and eye-witness will be subject to cross-examination concerning the weight of the testimony, and the jury will determine whether or not the in-court identifications are reliable.  Further, because the totality of the circumstances demonstrate independent reliability of the identifications, there is a not a substantial likelihood of irreparable misidentification.  Accordingly, the government should not be precluded from eliciting in-court identification, even if the out-of-court identification testimony is suppressed.  <u>See</u>, <u>e.g.</u>, <u>Kennaugh v. Miller</u>, 239 F.3d 36, 48 (2d Cir. 2002) (identification reliable because other evidence of guilt powerful and defense counsel able to challenge reliability of suggestive in-court identification on cross-examination); <u>United States v. Henderson</u>, 320 F.3d 92, 101 (1st Cir. 2003) (in-court identification reliable because witness remained steadfast in the positiveness of identification despite rigorous cross-examination); <u>United States v. Johnson</u>, 114 F.3d 435, 442 (4th Cir. 1997 (in-court identification reliable because witness expressed no hesitation when identifying the defendant out of court).

22

CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's motion to suppress the show-up identifications provided by the victim and the eye-witness.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:  _____/s/_____
Ali Kazemi
Celia A. Cohen
Assistant U.S. Attorneys
(718) 254-6171/6147

cc:  Clerk of Court (SJ)(By ECF and Hand)
     Charles Hochbaum, Esq. (By ECF and Email)

23