UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
UNITED STATES OF AMERICA

                                  -against-

KATOSH PANTOLIANO,

                                  Defendant.
------------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION
CR-10-68 (SJ)(SMG)**

GOLD, S., U.S.M.J.:

## INTRODUCTION

Defendant Katosh Pantoliano is charged in a five-count indictment with participating in and using a firearm in furtherance of a Hobbs Act robbery conspiracy (Counts One and Two) and conspiring to commit and committing a Hobbs Act robbery with a firearm (Counts Three, Four and Five). The government's evidence in support of Counts Three, Four and Five includes an identification of defendant made by a witness to the charged robbery. Pantoliano moves to suppress the identification testimony of the witness and for severance of Counts One and Two from Counts Three, Four and Five.[1] Senior United States District Judge Johnson referred the defendant's motions to me for report and recommendation. I held an evidentiary hearing on the suppression motion on October 18, 2010, and heard oral argument on defendant's motions on

---

[1] Defendant originally moved as well for a bill of particulars and to suppress additional identifications of him made by various individuals from a book of photographs. Defendant stated at the outset of the hearing I held on October 18, 2010 that he was not pressing his motion for particulars. Tr. at 3. Defendant withdrew his motion to suppress identifications made from the book of photographs during oral argument held on November 19, 2010 (transcript not available at this time).

November 19, 2010.  For the reasons stated below, I respectfully recommend that defendant's motion to exclude the identification testimony of the witness be granted and that his motion for severance be denied.

## FACTS

At the suppression hearing, the government presented the testimony of Special Agent Ayesha Winston of the Bureau of Alcohol, Tobacco, and Firearms.  Defendant did not testify or present evidence at the hearing.  The facts recounted below are drawn from Agent Winston's testimony.

Counts Three and Four are based on a robbery that took place outside of a diner on Ovington Avenue in Brooklyn at about 8:30 p.m. on September 28, 2009.  Tr. 28-29.  At that time, one of the owners of the diner (referred to at the hearing and herein as the victim) left the business with cash in his pocket and headed toward his car.  Tr. 29-30.  The victim noticed someone (referred to herein as the robber) standing by his car.  Tr. 30.  The robber then pulled a mask over half of his face and, wielding a gun, demanded money from the victim, who gave the robber $1,080 in cash.  Tr. 30.  After taking the money, the robber ran off, firing a gun as he left.  Tr. 31.  When police officers responded, the victim described the robber as slim, weighing about 150 to 160 pounds, and wearing a grey or light-colored hooded sweatshirt.  Tr. 31, 80.

Another individual (referred to at the hearing and herein as the witness) saw the getaway.  Tr. 32.  The witness told police that he saw a thin white male holding a gun and dressed in a grey or light-colored hooded sweatshirt with the hood up get into a car.  Tr. 33, 59, 80.  The witness also saw the car's driver and noted its license plate.  Tr. 34.

Having obtained the license plate from the witness, the police located the owner of the getaway car. Tr. 35. The owner stated that he had loaned the car to a man named Anthony Tuzzo. Tr. 36. The police next went to Tuzzo's house and saw the getaway car parked there. Tr. 36-37. They then saw two individuals, later identified as Tuzzo and defendant Pantoliano, on foot further down the street. Tr. 37.

The victim and witness, who were together in the rear seat of a detective's squad car, and had been left alone together in the police car on two occasions, were then brought to the location where Tuzzo and the defendant were found. Tr. 39, 55-56, 69. They arrived between sixty and eighty minutes after the robbery. Tr. 39, 55. Once they arrived, they were asked – while still together – to look at Tuzzo and Pantoliano and say whether they could identify either of them from the robbery. Tr. 40-42. The witness spoke Spanish and very little English, and was questioned in Spanish, and the victim spoke English and very little Spanish and was questioned in English. Tr. 40-42. The victim was able to identify defendant Pantoliano only by his clothing. Tr. 43. The witness, however, recognized Pantoliano and Tuzzo without hesitation as the robber and the driver of the getaway car. Tr. 44-46. In fact, the witness knew Tuzzo from before the robbery as a customer of the business he ran. Tr. 44.

## DISCUSSION

*A. Defendant's Motion to Suppress the Identification Made by the Witness*

A defendant's due process rights are violated by the admission of identification testimony only when "the pre-trial identification procedure gives rise to a very substantial likelihood of irreparable misidentification." *McBride v. Senkowski*, 2002 WL 523275, at * 5 (S.D.N.Y. Apr. 8, 2002), citing *Manson v. Brathwaite*, 432 U.S. 98, 113 (1977), and *Neil v. Biggers*, 409 U.S. 188,

198-99 (1972) (internal quotations omitted).  Determining whether identification testimony is admissible involves a two-step inquiry in which the court determines first, whether the out-of-court identification procedure was unduly suggestive and second, if so, whether the identification is nevertheless independently reliable.  *Id*.; *see also United States v. Tortora*, 30 F.3d 334, 338 (2d Cir. 1994).  In other words, a pre-trial identification will be excluded "only if it was *both* produced through an unnecessarily suggestive procedure *and* unreliable."  *United States v. Bautista*, 23 F.3d 726, 729 (2d Cir. 1994) (emphasis in original).  *See also Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009); *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001).

Showups like the one used here have been "widely condemned" as inherently suggestive. *See, e.g., Brisco*, 565 F.3d at 88; *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992), quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967).  Nevertheless, it is constitutionally permissible for law enforcement officers to conduct a showup when exigent circumstances warrant it.  *See, e.g., Brisco*, 565 F.3d at 88; *Concepcion*, 983 F.2d at 377; *Bautista*, 23 F.3d at 730.

The police were justified in using a showup in this case.  An armed robber was at large. Strong circumstantial evidence – their proximity to the getaway car and defendant's sweatshirt – suggested that the two men detained by the police were the robber and the getaway driver, but probable cause to arrest was at least arguably lacking.  Under circumstances like these, a prompt showing of a detained armed robbery suspect serves not only the important purpose of developing sufficient evidence to arrest a correctly identified suspect but also helps prevent the mistaken arrest of innocent individuals.  *See Bautista*, 23 F.3d at 730.  *See also United States v. Ortiz*, 2000 WL 37998, at *1 (S.D.N.Y. Jan. 18, 2000).

Although I conclude that using a showup procedure was justified under the circumstances presented here, I also conclude that the manner in which the showup was conducted was unnecessarily suggestive. Pantoliano could have been asked to remove his sweatshirt before the showup; he was not. Similarly, Pantoliano and Tuzzo could have been shown to the witness and victim separately and in two different locations; they were not. Instead, once the victim and witness were brought to the scene where Tuzzo and Pantoliano had been caught, a detective positioned the car window "where the victim and witness could see the two individuals, Mr. Pantoliano and Mr. Tuzzo, and asked them "Are these the people that robbed you?" Tr. 41.

As noted above, the witness recognized Tuzzo not only as the getaway driver but also as an occasional customer of his business.[2] Because he was already familiar with Tuzzo, it is not surprising that the witness was able to recognize him as the driver of the getaway car and to identify him without hesitation at the showup. When the witness saw Pantoliano, it undoubtedly occurred to the witness that Pantoliano had been found with Tuzzo. Moreover, Pantoliano was still wearing a sweatshirt similar to the one the witness and victim had already described. Because the witness saw Pantoliano together with Tuzzo and wearing clothes that matched his and the victim's description, there is a very substantial likelihood that the witness identified Pantoliano because of his clothing and the fact that he was with Tuzzo and not because he recognized Pantoliano's face as that of the robber. *See, e.g., Raheem*, 257 F.3d at 134 (noting that even a lineup may be unduly suggestive if the suspect is the only participant wearing distinctive clothing meeting the description of the perpetrator previously given by the witness).

---

[2] The evidence presented at the hearing does not indicate whether the police learned that the witness was familiar with Tuzzo before or only after the showup.

Moreover, the showup was not conducted in the immediate vicinity of the robbery. Courts deciding whether to admit showup identifications have noted that a showup is less likely to be suggestive when it is conducted promptly after the crime and in the location where the crime was committed. *Michaels v. Portuando*, 2002 WL 1732813, at *8 (E.D.N.Y. July 23, 2002); *McBride*, 2002 WL 523275, at * 5. Under such circumstances, the suggestiveness of the procedure is diminished because it is possible that the persons shown were detained only because they were in the vicinity and because they may well have no connection to each other. Here, because the showup was held at another location, a strong inference arose that Tuzzo and Pantoliano were apprehended together. As a result, the mere fact that Pantoliano was in Tuzzo's company so soon after the robbery unnecessarily suggested to the witness that Pantoliano was the robber.

Having concluded that the showup was conducted in an unnecessarily suggestive manner, I turn to whether the identification of Pantoliano by the witness is nevertheless independently reliable. In making this determination, I consider the well-known factors enumerated in *Neil v. Biggers*, including

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

409 U.S. at 199-200. "None of these factors standing alone is dispositive of independent reliability; instead, reliability is assessed in light of the totality of the circumstances." *Brisco*, 565 F.3d at 89 (internal quotations omitted).

In this case, the time between the crime and the confrontation – about an hour or an hour

and twenty minutes – was fairly short, and the witness expressed certainty at the time of the confrontation.  However, the opportunity of the witness to view the criminal was slight.  The robbery took place after dark.  The witness saw the robber only briefly.  The robber was wearing a hood.  The robber fired his weapon which, while attention-getting, undoubtedly also startled and frightened the witness.  Finally, the witness was able to describe the race, sweatshirt and build of the robber, but not his hair, facial features, other clothes, or anything else about him.  Notably in this regard, although it was late September and after 9:00 p.m., Pantoliano was wearing shorts when the police found him with Tuzzo on the night of the robbery.  Tr. 79.  However, neither the victim nor the witness described the robber as wearing shorts.

   When courts have found identifications to be independently reliable despite unnecessarily suggestive procedures, the facts have been much more compelling than those presented here.  In *Biggers*, for example, a rape victim was under attack for approximately thirty minutes and was able to provide a detailed description of her assailant.  409 U.S. at 200-201.  In *Tortora*, the witness spent about twenty minutes with the perpetrator at the time of the crime and had seen him on six to twelve prior occasions.  30 F.3d at 338.  Here, the witness had no prior familiarity with the robber and saw him only for moments, outdoors after dark, while he was wearing a hood.  Not surprisingly, the witness was able to provide police with only a very limited description.  For all these reasons, I conclude that the pretrial identification made by the witness of Pantoliano should be excluded.  Moreover, because the witness had a far greater opportunity to view Pantoliano at the showup than to view the robber at the scene of the crime, the witness should not be permitted to make an in-court identification at trial.  *See Tortora*, 30 F.3d at 338 (noting that, before permitting an in-court identification, the court must ask whether it will be the

product of suggestive procedures or is instead independently reliable).

B. *Defendant's Motion for a Severance*

Defendant argues in support of his severance motion that the robberies charged in Counts One and Two are different in character and time frame from the robbery, described in detail above, that forms the predicate for Counts Three, Four and Five. More specifically, defendant argues that Counts One and Two involve a series of "home invasion" robberies, committed with a specific group of co-conspirators and directed at drug dealers and gambling locations, whereas Counts Three, Four and Five concern a street robbery of a businessman committed without the participation of the others involved in the crimes charged in Counts One and Two and about a year later than those crimes. Hochbaum Aff., Docket Entry 23, ¶ 5-6. *See also* Gov't Mem. in Opp., Docket Entry 28, at 3-6.

As indicated in his written submissions and oral arguments to the court, defendant's contention is that the two sets of charges were not properly joined in the same indictment. Joinder of offenses is governed by Federal Rule of Criminal Procedure 8(a), which provides that offenses may be joined if they "are of the same or similar character." Similarity requires only that the charges are "somewhat alike" or "hav[e] a general likeness to each other." *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008), quoting *United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980). Joinder may also be sustained when "the evidence is sufficiently simple and distinct to mitigate the dangers otherwise created." *United States v. Halper*, 590 F.2d 422, 431 (2d Cir. 1978).

When a robber "use[s] distinctly different methods" and "target[s] distinctly different victims," though, joinder is improper. *See United States v. Tubol*, 191 F.3d 88, 95 (2d Cir.

1999). Although this general language seems to suggest support for defendant's severance motion, *Tubol*'s facts are distinguishable from those presented here. *Tubol* concerned joinder of charges involving a bank robbery with those arising from the robbery of a nearby appliance store. The bank was robbed by a man disguised as a Hasidic Jew who claimed to have a bomb. The appliance store was robbed by a man armed with a gun who was not dressed in Hasidic garb and did not claim to have an explosive device. Moreover, while the bank robber spoke in English, the robber of the appliance store spoke to his victim in Hebrew. The Second Circuit held that these "distinctly different" methods and victims rendered joinder improper. 191 F.3d at 95.

      The differences between the robbery charged in Counts Three, Four and Five and the ones that form the basis of Counts One and Two are not as substantial as those in *Tubol*. Here, as indicated in Counts Two and Five, firearms were allegedly used in connection with each the robberies. The victims – narcotics dealers and gambling houses on the one hand, and a restaurant owner leaving at the end of the day on the other – were, it seems, chosen for the same reason: a likelihood that substantial cash would be on hand. One or more co-conspirators was enlisted to accomplish the robberies. Finally, none of the distinctions that marked the two robberies in *Tubol* – differences in dress and language and the threatened use of a bomb in one robbery but not the other – are present here.

      Federal Rule of Criminal Procedure 8(a) "provides a liberal standard for joinder." *United States v. McGrath*, 558 F.2d 1102, 1106 (2d Cir. 1977). The robberies charged in the instant indictment are somewhat alike, and that is sufficient. Moreover, because the charges are relatively straightforward and the charges involved in Counts One and Two are no more or less inflammatory than those involved in Counts Three, Four and Five, there is little risk of

9

prejudicial spillover.  For all these reasons, defendant's severance motion should be denied.

## CONCLUSION

For all the reasons stated above, I respectfully recommend that defendant's motion to exclude the witness from identifying him at trial be granted, and that defendant's motion for a severance be denied.  Any objections to the recommendations contained in this report must filed with the Clerk of the Court within fourteen days of this Report and in any event no later than December 13, 2010.  Failure to object to this report may waive the right to appeal the district court's order.  *See* 28 U.S.C. § 636(b)(1); FED. R. CRIM. P. 59; *See Thomas v. Arn*, 474 U.S. 140, 155 (1985).

/s/

**Steven M. Gold**
**United States Magistrate Judge**

**Brooklyn, New York**
**November 24, 2010**

U:\BW 2010\Pantoliano R&R.wpd