UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X

UNITED STATES OF AMERICA

- against -

KATOSH PANTOLIANO, et al.

Defendant.

-------------------------------------------------X

10 CR 68 (SJ) (SMG)

ORDER ADOPTING
REPORT AND
RECOMMENDATION

APPEARANCES

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
By:  Ali Kazemi
     Celia A. Cohen
     Assistant United States Attorneys
Attorney for the Government

CHARLES S. HOCHBAUM, P.C.
16 Court Street, Suite 1800
Brooklyn, New York 11201
By:  Charles Samuel Hochbaum
     Court Appointed Counsel
Attorney for Defendant

JOHNSON, Senior District Judge:

Defendant Katosh Pantoliano ("Defendant" or "Pantoliano") is charged in a

five-count indictment with: (1) two counts of Hobbs Act robbery conspiracy in

1

violation of 18 U.S.C. § 1951(a); (2) one count of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a); and (3) two counts of unlawful use of a firearm in violation of 18 U.S.C. § 924(c). Presently before this Court are: (1) Pantoliano's motion to suppress the show-up identifications of him by the victim and an eyewitness in connection with a robbery on September 28, 2009, and (2) Pantoliano's motion to sever Counts One and Two of the Indictment from Counts Three, Four, and Five.

On September 2, 2010, the motions were referred to Chief Magistrate Judge Steven M. Gold for a Report and Recommendation ("Report"). Judge Gold conducted an evidentiary hearing on the motions on October 18, 2010. In November 2010, the parties submitted post-hearing briefing; on November 19, Judge Gold heard argument on the motions.[1] On November 24, 2010, Judge Gold issued his Report in which he recommends granting Defendant's motion to suppress the identifications and denying Defendant's motion to sever. Pursuant to 28 U.S.C. § 636(b)(1), the Government timely filed objections to the Report on December 8, 2010. Defendant has not filed a response.[2]

The Court has reviewed <u>de novo</u> the portions of the Report to which the Government objects. The Government's objections do not raise new legal or

---

[1] Pantoliano originally moved for a bill of particulars in addition to the motion to suppress and the motion to sever. At the November 19 oral argument before Judge Gold, Pantoliano withdrew his motion for a bill of particulars and motion to suppress identifications made from a book of photographs.

[2] At a status conference on December 16, 2010 before this Court, defense counsel requested permission to file a response to the Government's objections. To date, no objections have been filed by defense counsel. However, on January 25, 2011, the Court received objections filed by Defendant <u>pro se</u>. These objections are untimely and shall not be considered.

2

factual arguments not previously considered by Judge Gold. Accordingly, the Report is adopted in its entirety.

## BACKGROUND

At the October 18 hearing on the motion, the Government presented the testimony of Special Agent Ayesha Winston ("Winston") of the Bureau of Alcohol, Tobacco, Firearms and Explosives. The facts are derived from her testimony; Defendant called no witnesses and presented no evidence.

Winston testified that a robbery occurred outside of a diner in Brooklyn on September 28, 2009. On or about 8:30 p.m. that evening, one of the owners of the diner left the establishment with cash in his pocket. Upon reaching his car, he noticed the robber standing nearby. The robber pulled a mask over half his face, wielded a gun, and demanded money from the owner. The owner gave the robber $1,080 in cash. The robber then fled and fired the gun as he left. When officers of the New York City Police Department ("NYPD") arrived, the owner described the robber as "slim, weighing about 150 to 160 pounds, and wearing a grey or light-colored hood sweatshirt." (Report at 2.)

An eyewitness saw the robber escape. The eyewitness told the NYPD that he saw "a thin white male holding a gun and dressed in a grey or light-colored hooded sweatshirt with the hood up" get into a car driven by another person. (Report at 2.) The eyewitness saw the car's driver and license plate, and provided the plate number to the police. The police used this information to locate the owner

of the getaway car. The car owner stated that he had loaned the car to Anthony Tuozzo.[3] The police went to Tuozzo's house and saw the getaway car parked there. They also saw two individuals, later identified as Tuozzo and Pantoliano, on foot further down the street. (Report at 2–3.)

Approximately sixty to eighty minutes after the robbery, the owner and the eyewitness were brought to the location where Tuozzo and Pantoliano were found. The owner and the eyewitness were together in the rear of a police officer's squad car. Upon their arrival, they were asked—while still in the squad car together—to look at Tuozzo and Pantoliano and say whether they could identify either of them from the robbery.[4] The owner identified Pantoliano only by his clothing. The eyewitness identified Pantoliano as the robber. He also stated that he recognized Tuozzo as a customer of his business and identified him as the driver of the getaway car. (Report at 3.)

## DISCUSSION

A district court judge may designate a magistrate judge to hear and determine certain motions pending before the Court and to submit to the Court proposed findings of fact and a recommendation as to the disposition of the motion. See 28 U.S.C. § 636(b)(1). Within 14 days of service of the recommendation, any party may file written objections to the magistrate's report. See id. If either party

---

[3] Tuozzo has since been charged on a superseding indictment.
[4] The testimony reveals that the owner spoke English and very little Spanish, while the eyewitness spoke Spanish and very little English. (Report at 3.)

4

objects to the magistrate judge's recommendations, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." See id.; see also United States v. Tortora, 30 F.3d 334, 337 (2d Cir. 1994). A de novo determination entails an independent review of all objections and responses to the magistrate's findings and recommendations. See, e.g., Tortora, 30 F.3d at 337–38; cf. Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1045 (2d Cir. 1992). The Court, however, does not need to rehear contested testimony in order to make its determination. United States v. Ten Cartons Ener-B Nasal Gel, 888 F. Supp. 381, 390 (E.D.N.Y.), aff'd, 72 F.3d 285 (2d Cir. 1995).

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. See Thomas v. Arn, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections may waive the right to appeal this Court's Order. See 28 U.S.C. § 636(b)(1); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

In this case, the Government contests only the portion of the Report granting Defendant's motion to suppress the show-up identifications. When a witness makes a pre-trial identification, a challenge to the identification requires the Court to determine whether the pre-trial identification procedure was unnecessarily suggestive and conducive to misidentification. United States v. DiTommaso, 817

5

P-049

F.2d 201, 213 (2d Cir. 1987). If the identification procedure was unduly suggestive, the identification evidence is admissible nonetheless if it is independently reliable. Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001). Courts consider five factors to determine whether an identification was reliable even though the confrontation procedure was suggestive:

> [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

Neil v. Biggers, 409 U.S. 188, 199–200 (1972). To determine whether the identification was independently reliable, the Court must examine the totality of circumstances surrounding the identification. See id. at 199.

### A. Undue Suggestiveness

Judge Gold found that the following factors, in combination, supported a finding of undue suggestiveness: (1) after the police found the getaway car at Tuozzo's house, the show-up included both Pantoliano and Tuozzo in the same location, instead of only Pantoliano; (2) during the show-up, Pantoliano wore a gray sweatshirt that matched the description of the robber's s clothes given by the owner and the witness, which could have permitted recognition of Pantoliano's clothing instead of his face; and (3) the show-up was held in a location far from the crime scene, raising an inference that Tuozzo (who the eyewitness identified as the getaway driver) and Pantoliano were apprehended together and therefore that

Pantoliano was the robber. (See Report at 5–6.) The Government argues that the show-up identification was not unduly suggestive because: (1) Pantoliano's gray sweatshirt was not distinctive enough to draw attention to him at the show-up; (2) the show-up occurred one hour after the robbery, thus providing ample time for the robber and the getaway driver to split up; and (3) the show-up was held near the getaway car, thus diminishing suggestiveness. (Gov't Obj. 13–17.)

After reviewing the record, the Court does not find the Government's opposition arguments persuasive. The Court must consider the totality of the circumstances surrounding the identification. Brisco v. Ercole, 565 F.3d 80, 88 (2d Cir. 2009). Instead, the Government's objections invite the Court to view the facts of the show-up discretely and out of context. The Court declines the invitation. Accordingly, the Court adopts the finding of undue suggestiveness.

### B. Independent Reliability

Judge Gold also found that the identifications of Pantoliano were not independently reliable. Applying the fourth and fifth Bigger factors, Judge Gold found that "the time between the crime and the confrontation (about an hour or an hour and twenty minutes) was fairly short," and that "the witness expressed certainty at the time of the confrontation." (Report at 6–7.) He also found, however, that the first, second and third Bigger factors weighed against independent reliability: (1) at the time of the crime, the eyewitness saw the robber

only briefly, and the robber was wearing a hood; (2) the robber fired a gun which "startled and frightened" the eyewitness; and (3) the eyewitness described "the race, sweatshirt, and build of the robber," but not his hair, facial features, other clothes, or anything else about him. (Report at 7.) The Government argues that the show-up was independently reliable because: (1) the eyewitness had sufficient opportunity to view the robber, especially since he provided the getaway car's license plate number; (2) the witness was paying close attention despite the gunshot; (3) the witness confidently identified Pantoliano as the gunman; and (4) the show-up occurred only an hour and a half after the robbery and immediately after officers apprehended Defendant. (Gov't Obj. 19–22.)

After reviewing the record, the Court notes that the reliability analyses in the Report and in the Government's objections are applied only to the eyewitness's identification, not to the owner's identification. (Compare Report at 2–3 (recounting the facts of the owner's and eyewitness's respective encounters with the robber and subsequent identification of Defendant), with id. at 6–7 (applying Bigger factors to identification by "the witness"); see also Gov't Obj. 19–21 (same).) The record reflects that Defendant asks this Court to suppress both show-up identifications. (See Def. Mem., Docket 37.) Upon de novo review, the Court adopts the finding that the eyewitness's identification is not independently reliable. Further, the Court concludes that the owner's identification similarly is not independently reliable. At the time of the crime, the owner viewed the robber in

8

the dark, with the robber's face partially covered. (Tr. 30, 43.) The owner gave the police a description of the robber's clothing and build and no other details. (Tr. 31–32.) At the show-up, the owner could not identify Pantoliano's face positively. (Tr. 43.) Viewing the circumstances of the show-up in their totality, the Court finds that the owner's identification procedure, like that of the eyewitness, was conducive to misidentification. See Raheem, 257 F.3d at 140 ("[P]roper inquiry seeks to fathom whether the witness's identification is worthy of reliance, that is, whether it provides a foundation on which the factfinder can reasonably depend.") (citation and alterations omitted). Accordingly, neither the owner nor the eyewitness should be permitted to make in-court identifications at trial. See id.

## CONCLUSION

Based on the review of the hearing transcript and Judge Gold's Report, and in light of the fact that the Government has not raised any new arguments that would convince this Court to reject Judge Gold's recommendation, this Court affirms and adopts the Report in its entirety. Accordingly, Defendant's motion to suppress the show-up identifications is granted, and his motion for a severance is denied.

**SO ORDERED.**

DATED: March 28, 2011
Brooklyn, New York

s/ SJ
Hon. Sterling Johnson, Jr., Senior U.S.D.J.