**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

**UNITED STATES OF AMERICA**

       **-against-**

**ANTHONY TUOZZO,**

              **Defendant.**

-------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
**CR-10-68 (SJ)(SMG)**

**GOLD, S., U.S.M.J.:**

## INTRODUCTION

      Defendant Anthony Tuozzo is charged in a second superseding indictment with conspiracy to rob and robbery of restaurant proceeds from an employee of a restaurant on September 28, 2009, as well as with use of a firearm in the course of the robbery. Docket Entry 84. On February 14, 2011, Tuozzo filed a motion seeking to sever the charges against him from those pending against his co-defendant, Katosh Panoliano; to suppress an identification of him by a witness to the robbery; and to suppress physical evidence seized from his home without a warrant at the time of his arrest. Docket Entry 57. By Order dated March 28, 2011, Senior United States District Judge Sterling Johnson, Jr., referred Tuozzo's motion to me.

      I held a hearing on the motion on June 22, 2011. On June 15, 2011, Pantoliano entered a plea of guilty, rendering Tuozzo's motion for a severance moot. In addition, at the outset of the hearing, Tuozzo withdrew his claim that the search of his home was conducted in violation of his constitutional rights. Transcript of 6/22/2011 Suppression Hearing ("Tr") at 4-5. Thus, the only matter pending before the Court is Tuozzo's motion to suppress the identification of him made by a witness to the robbery.

**DISCUSSION**

The same witness who identified Tuozzo also identified his co-defendant, Pantoliano. Pantoliano moved to suppress that identification, and I issued a report recommending that the motion be granted.  Docket Entry 39.  My recommendation was adopted by Judge Johnson on March 28, 2011.  Docket Entry 73.  The facts pertinent to Tuozzo's motion are generally the same as those Judge Johnson and I set forth in our earlier decisions and are therefore not repeated at length here.

The legal standards governing the admissibility of identification testimony are well-settled.  A defendant's due process rights are violated by the admission of identification testimony only when "the pre-trial identification procedure gives rise to a very substantial likelihood of irreparable misidentification." *McBride v. Senkowski*, 2002 WL 523275, at * 5 (S.D.N.Y. Apr. 8, 2002), citing *Manson v. Brathwaite*, 432 U.S. 98, 113 (1977), and *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972) (internal quotations omitted).  Determining whether identification testimony is admissible involves a two-step inquiry in which the court determines first, whether the out-of-court identification procedure was unduly suggestive and second, if so, whether the identification is nevertheless independently reliable.  *Id.*; *see also United States v. Tortora*, 30 F.3d 334, 338 (2d Cir. 1994).  In other words, a pre-trial identification will be excluded "only if it was *both* produced through an unnecessarily suggestive procedure *and* unreliable." *United States v. Bautista*, 23 F.3d 726, 729 (2d Cir. 1994) (emphasis in original). *See also Brisco v. Ercole*, 565 F.3d 80, 88-89 (2d Cir. 2009); *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001).

In my earlier report, I concluded that the showup procedure during which Pantoliano and Tuozzo were identified was unnecessarily suggestive.  Judge Johnson adopted that finding, and the government does not challenge it for purposes of Tuozzo's pending motion.  Accordingly, the sole question raised by Tuozzo's motion is whether the challenged identification was nevertheless independently reliable.  To resolve this question, I consider the well-known factors enumerated in *Neil v. Biggers*, including

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

409 U.S. at 199-200.  I also bear in mind that "[n]one of these factors standing alone is dispositive of independent reliability; instead, reliability is assessed in light of the totality of the circumstances."  *Brisco*, 565 F.3d at 89 (internal quotations omitted).

Special Agent Asheya Winston of the Bureau of Alcohol, Tobacco, Firearms and explosives was the sole witness called to testify at the hearing.  Agent Winston gathered the facts she recounted in her testimony by, among other things, interviewing the robbery victim and the identification witness and speaking to the police officers who responded to the scene of the robbery and conducted the showup.  Winston learned from her investigation that the witness worked at a juice bar in the neighborhood where the robbery took place.  Tr. at 12.  The witness was taking out the garbage shortly before the robbery and saw a man the witness later identified as defendant Tuozzo in the driver's seat of a parked car.  Tr. at 12-14.  Although the witness was not friendly with Tuozzo and did not know his name, the witness recognized Tuozzo as a customer of the juice bar where the witness was employed.  Tr. at 13, 46.

3

After going back inside, the witness heard a shot.  Tr. at 12.  The witness then went back

outside, saw an armed man in a hooded sweatshirt get into the car, and saw Tuozzo and the man

in the sweatshirt drive away.  *Id.*  At that time, the witness wrote down the car's license plate

number.  Tr. at 15.

After receiving a 911 call, police officers arrived at the crime scene.  Tr. at 11.  The

witness met with two officers and provided them with the license plate information from the

getaway car.  Tr. at 15.  The officers then obtained the registration information associated with

the plate number and located the car's owner.  Tr. at 15-16.  The owner told the officers that

defendant Tuozzo had borrowed the car and provided the officers with Tuozzo's address.  *Id.*

The officers then located the car in the vicinity of Tuozzo's home and found Tuozzo and

Pantoliano on the street not far from the car.  Tr. at 17-18.  The victim and witness were brought

to the scene, where the witness identified Tuozzo as the man the witness had recognized from the

juice bar and seen behind the wheel of the getaway car earlier that evening.  Tr. at 19-22.  The

officer conducting the showup later told Agent Winston that the witness did not hesitate when

identifying Tuozzo and that the identification was a strong one.  Tr. at 23, 46.

Having considered these facts in light of the *Biggers* factors, I conclude that the

identification of Tuozzo by the witness was independently reliable.  The witness had the

opportunity to see the driver twice at the time of the crime, first when taking out the garbage and

again after hearing a gun fired.  Tr. at 12.  Agent Winston described the area where the car was

parked as busy and well-lit, even after dark.  Tr. at 16.  The ability of the witness to provide the

police with the license plate number of the getaway car demonstrates that the witness paid close

attention to the car.  Although the witness did not provide a description of the driver, I give this

4

factor little weight in light of the fact that the witness recognized the driver from the juice bar where the witness worked.  Indeed, the witness' previous familiarity with the individual driving the getaway car strongly supports the reliability of the witness' identification of Tuozzo.  Finally, the witness was unhesitating and confident about the identification, and made the identification within two hours of the robbery.

Defendant Tuozzo does not seriously contest that these facts support a finding of independent reliability.  Rather, Tuozzo's primary argument is that the government has failed to establish these facts – and in particular the fact that the witness recognized the man behind the wheel on the night of the robbery as a juice bar customer – with credible evidence.  *See* Tr. at 59-61.  In this regard, Tuozzo points out that the report prepared by the officers who interviewed the witness on the night of the robbery makes no mention of the fact that the witness recognized the getaway driver as someone who previously patronized the juice bar.  *See id.*  Tuozzo also stresses that the witness recanted the challenged identification shortly after the night of the robbery and stated that the police were mistaken in their assertion that the witness had ever said Tuozzo was the driver of the getaway car.  *See* Tr. at 51-54.

I conclude that the government has convincingly established that the witness recognized the driver of the getaway car as a customer of the juice bar where the witness worked.  Although the officers who interviewed the witness on the night of the robbery did not include this fact in their report, Agent Winston credibly testified that those officers later told her that, on the night of the robbery, the witness did in fact inform them about having recognized the driver as a juice bar customer.  Tr. at 44.  Moreover, Agent Winston testified that, when she subsequently interviewed the witness, the witness also reported to her about having recognized the man behind the wheel

5

of the getaway car from the juice bar.  Tr. at 25-26, 42-43.  Agent Winston's report of her interview with the witness on August 31, 2010 confirms her testimony, in that it indicates that the witness "saw the drivers [sic] [f]ace – the guy with the light hair who [the witness] had seen in the neighborhood."  Gov't Ex. 3500-AW-8.  Although the witness at one point did deny recognizing and identifying Tuozzo as the getaway driver, Agent Winston testified that the witness later confirmed the identification of Tuozzo as the getaway car driver and attributed the earlier recantation to feeling intimidated.  Tr. at 24-25.

I find Agent Winston's testimony to be entirely credible.  Even if I were to put aside the statements of the police officers indicating that the witness told them on the night of the robbery about having recognized the driver from the juice bar, I would still find that the government has convincingly established that the witness told Agent Winston about recognizing the driver from the neighborhood when she interviewed the witness on August 31, 2010.  While defendant might argue that the witness was not being truthful with Agent Winston, I see no motive for the witness to lie.  There is no evidence indicating, for example, that the witness was facing any criminal charges or had any reason for attempting to curry favor with law enforcement officers.  Thus, I conclude that the totality of the circumstances establishes the independent reliability of the witness' identification of defendant Tuozzo.

## CONCLUSION

For all the reasons stated above, I respectfully recommend that defendant Tuozzo's motion to suppress the identification testimony of the witness be denied.  Any objections to the recommendations contained in this report must filed with the Clerk of the Court within fourteen days of this Report and in any event no later than August 15, 2011.  Failure to object to this

report may waive the right to appeal the district court's order.  *See* 28 U.S.C. § 636(b)(1); FED. R. CRIM. P. 59; *Thomas v. Arn*, 474 U.S. 140, 155 (1985).


_____/s/_____

**Steven M. Gold**

**United States Magistrate Judge**

**Brooklyn, New York**
**July 28, 2011**


U:\BW 2010\tuozzo suppression hearing - final.wpd

7