CLERK OF U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
225 - CADMAN PLAZA EAST
BROOKLYN, N.Y. 11201

DECEMBER 4, 2011;

RE: U.S. v. PANTOLIANO, 10-CR-068(SJ);

DEAR CLERK ...)

PLEASE FILE THE ENCLOSED
"SECOND SUPPLEMENTAL- OBJECTION-
AFFIDAVIT" ON MY DOCKET.
THANK YOU ONCE AGAIN.

(HAVE A HAPPY HOLIDAY.)

KATOSH PANTOLIANO, 77941-053
MDC- BKLYN; P.O. BOX 329002
BROOKLYN, N.Y. 11232

C.C... FILE:

TRULINCS 77941053 - PANTOLIANO, KATOSH - Unit: BRO-I-B

-----------------------------------------------------------------------------------------------

FROM: 77941053
TO:
SUBJECT: Second Supplemental Objections...
DATE: 12/04/2011 03:14:50 PM

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

NOT SUBJECT TO PATRIOT ACT
_____x
UNITED STATES OF AMERICA, (AUSA-CELIA COHEN)

                                                     10-CR-00068-(SJ)
        -against-                                    HONORABLE
                                                     STERLING JOHNSON JR.
                                                     U.S.D.J.- E.D.N.Y.

KATOSH PANTOLIANO, (DEFENDANT)
_____x
DOE V. GONZALES, 500 F.SUPP. (S.D.N.Y. 2008)


DEFENDANT, KATOSH PANTOLIANO'S AFFIDAVIT IN SUPPORT OF:

SECOND SUPPLEMENTAL "OBJECTION[S]" TO PRE-SENTENCE REPORT AND PSR-ADDENDUM BASED ON
"PROSECUTORIAL MISCONDUCT" REGARDING PROSECUTOR (AUSA-CELIA COHEN) "CONTINUOUSLY",
"KNOWINGLY" AND "INTENTIONALLY" PRESENTING "FALSE-EVIDENCE" TO THE U.S. PROBATION OFFICE.

COMES NOW, DEFENDANT, KATOSH PANTOLIANO, VIA PRO PER IN PROPRIA PERSONA PROCEEDING SUI JURIS IN
THE ABOVE CAPTIONED CASE, OBJECTION, AFFIDAVIT:

[AFFIDAVIT OF, KATOSH PANTOLIANO, VIA FED.R.CIV.P. 56 (f)]


(Please be advised that this Objection[s]-Affidavit is not of "Hybrid" or "Bifurcated" representation, but is only out of an
abundance of caution regarding the failure of defendants counsel in raising such claims to the court)


[1.] The defendant hereby opines once again to the continuous "Prosecutorial Misconduct" that has and is still constantly
occurring even after the defendant has surrendered to the Court and pled guilty. Moreover, defendant opines that AUSA-Celia
Cohen (Ms. Cohen) has once again "knowingly" and "intentionally" presented "FALSE-EVIDENCE" in this case.
Ms.Cohen and the Government have "constantly", "knowingly", and "intentionally" presented "FALSE-EVIDENCE" in this
case on numerous occasions. (See, docket entry # 89, 92, 94, 104, 112, 113, 114).

[2.] According to the U.S. Probation Office's recent "Addendum",dated November 18, 2011 (See, Attached Exhibit "1", USPO's
"Addendum", paragraph 2, lines 1-4) the U.S. Probation Officer, Ms. Darcy Zavatsky (USPO) states:

"As an initial matter, the information contained in the Offense Conduct section of the PSR was provided by the Government.
The undersigned contacted Assistant United States Attorney Celia Cohen who informed that the Government maintains the
accuracy of this information."

[3.] Basically, in the above statement thats mentioned in the USPO's "Addendum" (See, Attached Exhibit "1", paragraph 2,

TRULINCS 77941053 - PANTOLIANO, KATOSH - Unit: BRO-I-B

--------------------------------------------------------------------------------------------------------------

lines 1-4) Ms. Cohen informs the USPO that the Government maintains its accuracy of the "information" she provided to the USPO. The "information" that Ms. Cohen is referring to - is the "FALSE-EVIDENCE" that she "knowingly" and "intentionally" provided to the USPO to be documented in the defendants Pre-Sentence Report (PSR) to deliberately enhance the defendants sentence. This "FALSE EVIDENCE" mentioned is detailed "information" of alleged "Offense Characteristics" regarding "Substantial crimes" that Ms. Cohen "knew" the defendant never pled guilty to. According to the defendants "Plea Allocution" that was held on June 15, 2011 (See Attached Exhibit "2", Transcript of "Plea Allocution",bottom of page 12 and top of page 13) the defendant only pled guilty to a "Conspiracy" and not to the substantial crimes. Ms. Cohen confirms this "Conspiracy" charge during this mentioned proceeding. (See, Attached Exhibit "2", pg. 13, line 1). During this June 15, 2011 "Plea Allocution" the record specifically states:

THE COURT: He's not charged with the substantial crime. Just the Conspiracy?

MS. COHEN: Just the conspiracy.

[4.] Evidently, Ms. Cohen states on the record mentioned above and confirms to the court (See, Attached Exhibit "2", pg.12, lines 24-25, and pg. 13, line 1) that the defendant is not being charged with the "Substantial crime" and only with the "Conspiracy". So, the question here is that....Why would Ms. Cohen provide detailed "information" pertaining to "Offense Characteristics" regarding "Substantial crimes" (which she "knows" is "FALSE-EVIDENCE") to the USPO? And, Why would Ms. Cohen inform that the Government maintains the accuracy of this "information" (that she "knows" is "FALSE-EVIDENCE") after she specifically stated and confirmed to the court on the record (See, Attached Exhibit "2", pg. 12, lines 24-25, pg. 13, line 1) that the defendant was not charged with the "Substantial crime"? It is obvious due to the evidence that defendant attaches with this argument (See, attached Exhibits "1" and "2") that Ms. Cohen has "knowingly" and "intentionally" presented "FALSE-EVIDENCE" to the USPO in hopes of deliberately enhancing the defendants sentence.

[5.] In addition, Ms. Cohen has been involved in other egregious misconduct prior to this incident. In August of 2010, Ms. Cohen participated in the "witness tampering" of an alleged civilian witness (who was not even a witness to crime). Ms. Cohen and her partner (AUSA-Ali Kazemi) interrogated this mentioned alleged civilian witness on numerous occasions until they were able to accomplish obtaining the statements they needed in order to convict defendant at any cost. (See, docket entry # 89,92, and 94). Moreover, In November of 2010, Ms. Cohen (along with her recent partner, AUSA Ali Kazemi) also "knowingly" presented "FALSE-EVIDENCE" in a Suppression Hearing in front of the Magistrate Judge Steven M. Gold. (See docket entries #33, and 104). In April of 2011, Ms. Cohen (with AUSA-Ali Kazemi) "knowingly" and "intentionally" orchestrated an alleged DNA-testing, where they directed case-agents to enter the MDC-facility to interrogate defendant in a room without defendant's attorney being present. This mentioned interrogation was orchestrated by Ms. Cohen and her recent partner (AUSA-KAZEMI) in order to illegally obtain evidence to be used against the defendant. (See, docket entry- # 80, 81, 82, 83, 91, 93, and 98). Ms. Cohen has been so embroiled in convicting the defendant that she has used unfair prejudice tactics in using "Separation-Orders" to keep the defendant and his alleged co-conspirators separated in order to hinder defenses and to restrict the defendants movements in the prison that the defendant is detained in, which also hinders and affects defendants visits with his 3 year old son, fiance, elderly parents, lawyers, and his Sunday Mass. It is obvious that Ms. Cohen has lost sight in Justice, and any further prosecution would not be in good faith.

[6.] Even after the defendant has surrendered to the Court and pled guilty, Ms. Cohen and the Government still persists in continuously, and "knowingly", and "intentionally" presenting "FALSE-EVIDENCE", but now to the Probation Department, in hopes of the defendant getting an enhanced sentence rather than what he was subjected to agree upon. This type of "Prosecutorial Misconduct" is what caused the defendant to plea guilty because the court has allowed and continues to allow this "Prosecutorial- Misconduct" to occur in "knowingly" and "intentionally" presenting "FALSE-EVIDENCE".

In, Drake v. Portuondo, 553 F.3d 230 (2d. Cir. 2009), The Second Circuit held, "Since at least 1935, it has been established law of the United States that a conviction obtained through testimony the prosecutor knows to be false is repugnant to the constitution. See, Mooney v. Holohan, 294 U.S. 103, 112, 55 S. Ct 340, 79 L. ed. 791 (1935). This is so because, in order to reduce the danger of false convictions, we rely on the prosecutor not to be simply a party in litigation whose sole object is the conviction of the defendant before him. The prosecutor is an officer of the court whose duty is to present a forceful case and truthful case to the jury, not to win at any cost. See e.g. Jenkins v. Artuz, 294 F.3d. 284, 296 n. 2 (2d. Cir. 2002)- (noting prosecutor under New York State Law is to seek justice not merely to convict.

In, Giglio v. Unite States, 405 U.S. 150, 31 L.Ed. 2d 104, 92 S.Ct. 763 (1972), The Supreme Court of the United States held " a conviction obtained through the knowing use of false evidence must fall under the Due Process Clause, under the Fourteenth Amendment of the United States Constitution.

How long is the Court going to continue to allow Ms. Cohen and the Government to "knowingly" and "intentionally" present

TRULINCS 77941053 - PANTOLIANO, KATOSH - Unit: BRO-I-B

------------------------------------------------------------------------------------------------------

"FALSE-EVIDENCE" in this case, even after the defendant has surrendered to the Court and pled guilty?

Is Ms.Cohen and the Government allowed to obtain a conviction, upon a plea of guilty, by "knowingly" and "intentionally" presenting "FALSE-EVIDENCE" on a "Arrest Warrant and Complaint", to a "Federal Grand Jury", in a "Suppression Hearing", on a "DNA-Search-Warrant", and now to the "Probation Office" ? (See, Docket entry # 89, 92, 94, 104, 112, 113, and 114).

Is Ms. Cohen and the Government allowed to obtain a conviction, upon a plea of guilty, by "knowingly" and "intentionally" directing case-agents to enter the Metropolitan Detention Center and have the defendant escorted to a room to interrogate the defendant without his attorney present, in order to illegaly obtain evidence to gain a conviction at any cost? (See, Docket errntry #80, 81, 82, 83, 91, 93, and 98).

Is Ms. Cohen and the Government allowed to obtain a conviction, upon a plea of guilty, by interrogating and constantly interviewing an alleged witness (who is not even a witness to a crime) until he makes the statements that the Government needs him to state in order to obtain a conviction at any cost? (See, Docket entries, # 89, 92, and 94).

Is Ms. Cohen and the Government allowed to obtain a conviction, upon a plea of guilty, by intimidating all of the defendants CJA attorneys to the point where they will not raise any of the Constitutional violations and defendants claims to the Court?

Is the Government allowed to obtain a conviction, upon a plea of guilty, by using prejudice tactics to appoint a U.S. Attorney (AUSA-Ali Kazemi) who was once a Law-Clerk for the Court and "knowingly" and "intentionally" creating a  "conflict of interest" ? (Information that was provided to the defendant by previous CJA-Attorneys).

Is the Government allowed to obtain a conviction, upon a plea of guilty, by "Judge-Shopping" and assigning the Judge that they particularly need and want in order to convict the defendant at any cost?

Is Ms. Cohen and the Government aloowed to obtain a conviction, upon a plea of guilty, by using unfair-separation-orders to keep the defendant separated from alleged co-conspirators in order to hinder the defendants defense and the defendants movement in prison to affect the defendants visits with his 3 year old son, fiance, elderly parents, Lawyers, and Catholic Mass?

WHEREFORE, the defendant respectfully requests this court to disregard all of the "FALSE-EVIDENCE" that was provided to the USPO by Ms. Cohen and the Government and hereby requests for the Court to sentence the defendant to the "Conspiracy" charge that he was subjected to plea to, and not to the "FALSE-EVIDENCE" that Ms. Cohen has "knowingly" and "intentionally" presented in this case on numerous occasions tp obtain her convinction at any cost, and now to the U.S. Probation Office in hopes of deliberately enhancing the defendants sentence.


RESPECTFULLY SUBMITTED BY:
DEFENDANT-MOVANT-AFFIANT,
KATOSH PANTOLIANO, 77941-053
_Katosh K. Pantoliano_
MDC BKLYN., P.O. BOX 329002
BROOKLYN, N.Y. 11232

[PRO PER IN PROPRIA PERSONA PROCEEDING SUI JURIS]

[SIGNED UNDER PENALTIES OF PERJURY TO BE TRUE AND CORRECT]


C.C....FILE: MAILED ON DECEMBER 4, 2011 TO THE FOLLOWING:
AUSA-CELIA COHEN, (BY VIA US MAIL)...
CLERK OF U.S. DISTRICT COURT, (BY VIA U.S. MAIL)...
HONORABLE STERLING JOHNSON JR.,(BY VIA U.S. MAIL)...





U.S.A. V. KATOSH PANTOLIANO
Docket No: 10-CR-068-(S-1)-01
Sentence Date: November 18, 2011

## ADDENDUM TO THE PRESENTENCE REPORT

### Objections

### By the Government

To date, the Government has not submitted any objections to the presentence report.

### By the Defendant

The defendant submitted a *pro se* letter to the Probation Department, dated October 10, 2011 (attached), outlining various objections to the presentence report (PSR). Specifically, the defendant takes issue with various facts within the *Offense Conduct* section of the PSR, denying his involvement in all of the robberies outlined therein, as well as various details underlying the instant offense. The defendant also seeks credit for time he spent in pretrial detention at Riker's Island on an unrelated state case.

As an initial matter, the information contained in the *Offense Conduct* section of the PSR was provided by the Government. The undersigned contacted Assistant United States Attorney Celia Cohen who informed that the Government maintains the accuracy of this information. In the defendant's letter, he objects to all of the robberies in which he engaged, and frivolously denies relevant facts underlying his count of conviction. This is typically inconsistent with a reduction for Acceptance of Responsibility. However, given that the defendant submitted his letter *pro se*, and without the advice of counsel, some latitude should be afforded to him in this regard. Thus, at this juncture, the Probation Department does not believe that the reduction for Acceptance of Responsibility should be retracted.

Further, the defendant seeks to have his sentence reduced for time (approximately 5 months) he spent in Riker's Island on a prior state arrest noted in ¶¶72 and 73 of the PSR. In the defendant's letter, he erroneously states that "these charges are part of the alleged instant offense and are related to the instant offense as mentioned in ¶75" of the PSR. Notably, ¶75 refers to the charges outlined in ¶74 (for attempted murder, criminal possession of a weapon and robbery), and not the robbery charge noted in ¶¶72 and 73. These latter charges were dismissed in lieu of the instant federal case. The Probation Department respectfully believes that the defendant is not entitled to a downward departure. Defendant argues that per Policy Statement 5K2.23, he should be granted a downward departure for the five months he was detained at Riker's Island (November 5, 2008, to April 12, 2008, could not be verified by the Probation Department). First, the defendant did not serve a "term of imprisonment." Rather, he was held without bail until



1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,          : 10-CR-00068(SJ)
                                   :
                                   :
                                   :
        -against-                  : United States Courthouse
                                   : Brooklyn, New York
                                   :
                                   :
                                   : Wednesday, June 15, 2011
KATOSH PANTOLIANO,                 : 9:30 a.m.
                                   :
        Defendant.                 :
                                   :
                                   :

- - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE STERLING JOHNSON, JR.
UNITED STATES SENIOR DISTRICT JUDGE

A P P E A R A N C E S:

For the Government: LORETTA E. LYNCH, ESQ.
                    United States Attorney
                    Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, New York 11201
               BY:  CELIA COHEN, ESQ.
                    Assistant United States Attorney

For the Defendant:   RICHARD B. LIND
                     745 Fifth Avenue
                     Suite 902
                     New York, New York 10151-0902
                  BY:RICHARD B. LIND, ESQ.


Court Reporter:  Victoria A. Torres Butler, CRR
                 Official Court Reporter
                 Tele: (718) 613-2607 / Fax: (718) 613-2324
                 E-mail:  VButlerRPR@aol.com

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

```
                         Proceedings                      2

1              (In open court.)

2              (Senior Judge STERLING JOHNSON, JR. is in the

3    courtroom at 10:25 a.m.)

4              (Defendant enters the courtroom.)

5              THE COURT:  It's my understanding, Mr. Pantoliano,

6    that you wish to withdraw your previously entered plea of not

7    guilty and enter a plea of guilty; is that correct?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Swear the defendant in, Ana.

10             COURTROOM DEPUTY:  Please, raise your right hand.

11   K A T O S H     P A N T O L I A N O,

12             called by The Court, having been

13             first duly sworn, was examined and testified

14             as follows:

15

16             THE COURT:  Do you understand you're now under oath

17   and, if you answer any of my questions falsely, your answers

18   may later be used against you in another prosecution for

19   perjury of making a false statement?

20             Do you understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Okay.

23             Now, will you state your full name for the record.

24             THE DEFENDANT:  Katosh Pantoliano.

25             THE COURT:  How old are you?
```

Proceedings                          3

1          THE DEFENDANT:  Thirty-two.

2          THE COURT:  How much education have you had?

3          THE DEFENDANT:  GED.

4          THE COURT:  What school?

5          THE DEFENDANT:  It was a prison, actually.

6    Coxsackie Prison.

7          THE COURT:  It's a State prison.

8          THE DEFENDANT:  Yeah, State prison.  I got a GED.

9          THE COURT:  Okay.

10         Do you understand why you are here right now at this

11   particular moment?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Okay.

14         Have you been treated recently for any mental

15   illness?

16         THE DEFENDANT:  I take anxiety medication, for

17   anxiety.

18         THE COURT:  For?

19         THE DEFENDANT:  Anxiety.

20         THE COURT:  Anxiety.

21         THE DEFENDANT:  Yes.

22         THE COURT:  How do you feel right now?

23         Do you know what you're doing.

24         THE DEFENDANT:  Yes, I feel good.

25         THE COURT:  Okay.

Proceedings                                      4

1          Are you currently under the influence of any drug,

2   medication, or alcoholic beverage of any kind?

3          THE DEFENDANT:  No.

4          THE COURT:  Have you received a copy of the

5   indictment of the charges pending against you?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Have you discussed these charges with

8   your lawyer?

9          THE DEFENDANT:  Yes.

10         THE COURT:  And are you fully satisfied with the

11  advice, representation, and counsel he's given you with

12  respect to these charges?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Now, there is a plea agreement.  That

15  will be marked as Court's Exhibit Number 1.

16         And I show you page number seven.

17         (Showing.)

18         THE COURT:  And I ask you:  Is this your signature

19  (indicating)?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Now, were there any threats made to

22  induce to you sign Court's Exhibit Number 1.

23         THE DEFENDANT:  No.

24         THE COURT:  Are there any promises, other than the

25  promises contained in Court's Exhibit Number 1, that induced

                              Proceedings                         5

1   you to sign it?

2              THE DEFENDANT:  No.

3              THE COURT:  Now, according to Court's Exhibit

4   Number 1, you are charged with, in Count 1, a Hobbs Act

5   robbery conspiracy.  And the maximum amount of time you are

6   exposed to prison is 20 years.

7              Do you understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And if you receive a prison sentence,

10  you'll be placed on supervised release for a period of three

11  years.

12             Do you understand that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  And if you violate the terms of your

15  supervision, you can be sent back to prison for an additional

16  two years, notwithstanding the fact you've already served some

17  time.

18             Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  There is also a possibility of a

21  $250,000 fine or twice the gross gain or loss, whichever is

22  greater.

23             Do you understand that?

24             THE DEFENDANT:  Yes.

25             I could not afford to pay any fines, though,

Proceedings                                6

1   Your Honor.

2              THE COURT:  I'm just telling you.

3              THE DEFENDANT:  Oh, all right.

4              THE COURT:  And there is restitution, to be

5   determined by the Court --

6              THE DEFENDANT:  Yes.

7              THE COURT:  -- the possibility.

8         And a $100 special assessment.

9         Do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  And now in Count 2, Count 2 charges you

12  with brandishing a firearm during the commission of a crime of

13  violence.  And the maximum amount of time you are exposed to

14  imprisonment is life.

15        Do you understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And the minimum is seven years.

18        Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  And following any term of imprisonment,

21  you will be placed on supervised release for five years.

22        Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  If you violate the terms of your

25  supervision, you can be sentenced -- re-sentenced, up to five

Victoria A. Torres Butler, CRR
Official Court Reporter

1    years.

2             Do you understand that?

3             THE DEFENDANT:  Yes.

4             THE COURT:  Now, there's a possibility, as I said

5    before, under Count 1; you can be fined $250,000 or twice the

6    gross gain or loss.

7             Do you understand that?

8             THE DEFENDANT:  Yes.

9             THE COURT:  And there is restitution, to be

10   determined by the Court, if there is restitution.

11            Do you understand that?

12            THE DEFENDANT:  Yes.

13            THE COURT:  And there's a $100 special assessment on

14   this count, for a total of $200 all together.

15            Do you understand that?

16            THE DEFENDANT:  Yes.

17            THE COURT:  All right.

18            (Pause in the proceedings.)

19

20            THE COURT:  Now, on the Count 1, the guidelines

21   range is 33 to 41 months.

22            However, if the plea is accepted today, that will be

23   30 to what?

24            MR. LIND:  30 to 37 months, Judge.

25            MS. COHEN:  30 to 37 months, Judge.

Proceedings                    8

1          THE COURT:  30 to 37 months.

2          MS. COHEN:  That's correct.

3          THE COURT:  Do you understand that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And with respect to Count 2, it is seven

6   years.  And it must run consecutive to whatever term of

7   imprisonment you receive on Count 1.

8          Do you understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  And the total range of imprisonment

11   would be 114 to 121 months.

12          And that's including the 30 to 37 months --

13          MS. COHEN:  Correct, Your Honor, the third point.

14          THE COURT:  -- is that correct?

15          Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Also, you have agreed that you will not

18   file an appeal or otherwise challenge, by 2255 or any other

19   provision, your conviction or sentence in the event that the

20   Court imposes a sentence of imprisonment of 125 months or

21   below.

22          Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Now, you do not have to plead guilty.

25   You can plead not guilty.  And if you plead not guilty, you

Victoria A. Torres Butler, CRR
Official Court Reporter

Proceedings                                         9

1   will be entitled to a speedy and public trial.

2           Do you understand that?

3           THE DEFENDANT:  Yes.

4           THE COURT:  And at that trial, you wouldn't have to

5   do anything at all because the Government bears the burden of

6   proving your guilt beyond a reasonable doubt.

7           Do you understand that?

8           THE DEFENDANT:  Yes.

9           THE COURT:  And if there was a trial, the Government

10  trial, the Government would bring witnesses that would testify

11  against you.

12          Do you understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And you would have the right to

15  cross-examine those witnesses.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And if you wanted to, you could bring

19  witnesses in to testify in your behalf.

20          Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And if you wanted to, you could testify

23  yourself, in your own behalf.

24          Do you understand that?

25          THE DEFENDANT:  Yes.

Proceedings                                                10

1          THE COURT:  However, if your plea is accepted, there

2     will be no trial.

3          Do you understand that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And all of these rights that I've just

6     explained to you, will have been waived.

7          Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Now, do you have any prior felony

10    conviction?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Okay.

13         I ask the Government:  If you had to go to trial

14    with this defendant on these charges --

15         MS. COHEN:  Yes.

16         THE COURT:  -- what would the Government's proof be?

17         MS. COHEN:  The Government's proof would mainly

18    consist of testimony from cooperating witnesses, as well as

19    testimony with respect to the robbery itself.

20         This is, as described in the indictment, a robbery

21    of narcotics traffickers and gambling establishments.  So,

22    people who are there, witnesses to establish the background of

23    it, would also testify.

24         THE COURT:  You still haven't said anything.

25         MS. COHEN:  Oh.

```
                        Proceedings                    11
1           THE COURT:  What happened, when it happened, where
2    it happened.
3           MS. COHEN:  Sure, Your Honor.
4           They would testify that between April 2008 and
5    September 2008, within the Eastern District of New York, that
6    the defendant went into these establishments and robbed.
7           THE COURT:  What are "these establishments"?
8           MS. COHEN:  That would be gambling establishments.
9    They were, basically, illegal card games.  And he went in and
10   robbed people of the proceeds of those games.
11          And that, during that, that he also brandished a
12   firearm.
13          THE COURT:  I ask the defendant, tell me in your own
14   words:  What is it that you say you did wrong?  Tell me when
15   it occurred and what, if anything, you did.
16          THE DEFENDANT:  It, between April 2008 -- I'm going
17   to just state what the indictment says, is that all right?
18          THE COURT:  Just tell me what you did.
19          THE DEFENDANT:  All right.
20          Between April 2008 and September 2008, I conspired
21   to rob narcotics traffickers and gambling establishments.
22          THE COURT:  Now, you say "conspired".
23          What did you do to conspire?
24          THE DEFENDANT:  Um, conspired... to commit the
25   crimes.
```

Proceedings                    12

1           MR. LIND:  May I just talk to him for one second?

2           THE COURT:  Yes.

3           (Pause in the proceedings.)

4

5           THE DEFENDANT:  I conspired with others to commit

6      the crimes.

7           THE COURT:  And the crime was what?

8           THE DEFENDANT:  To rob traffickers and gambling

9      establishments.

10          THE COURT:  And where were these establishments?

11          THE DEFENDANT:  I don't have the exact addresses in

12     front of me.

13          THE COURT:  Well, I'm talking about geographically.

14          Where were they?

15          THE DEFENDANT:  They were Brooklyn and

16     Staten Island.

17          THE COURT:  And do we have the dates?

18          THE DEFENDANT:  That, I don't -- I don't know the

19     exact dates.

20          THE COURT:  Approximately; what year, what month?

21          THE DEFENDANT:  2008.  April 2008 to September 2008.

22          (Pause in the proceedings.)

23

24          THE COURT:  He's not charged with the substantive

25     crime.  Just the conspiracy?

Proceedings                          13

1          MS. COHEN:  Just the conspiracy.

2          And then, of course, use of the firearm in

3    connection with the crime.

4          THE COURT:  And with respect to conspiring to rob

5    these establishments, did you or any one of the persons you

6    conspired with have a gun?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Who; you or the other person?

9          THE DEFENDANT:  The others.

10         MR. LIND:  Just one second, Judge.

11         (Pause in the proceedings.)

12

13         THE DEFENDANT:  Yes, I brandished a gun.

14         THE COURT:  Okay.

15         Is there, anything else you wish me to ask him?

16         MS. COHEN:  No, that's sufficient for the

17   Government, Your Honor.

18         MR. LIND:  Judge, I just -- as Your Honor's aware,

19   Mr. Pantoliano has filed a number of letters with the Court

20   and --

21         THE COURT:  I am aware of that.  You are his third

22   attorney.

23         I had spoken to Mr. Pantoliano on several occasions

24   and I informed him that since he was represented by Counsel,

25   and he's always been represented by Counsel when he's come

Proceedings                                    14

1   before me, that there was no hybrid representation;

2           That if he wanted to contact me, he should do it

3   through his lawyer, and;

4           If I wanted to contact him, I would do it through

5   his lawyer.

6           So, these papers or motions that he has filed are

7   just pieces of paper.

8           MR. LIND:  Okay.  Let me interrupt you just make my

9   point, Judge.

10          In a number of them, initially, he expressed

11  dissatisfaction with me.  And I just, in terms of the plea, I

12  just want to make it clear that that no longer -- that that

13  dissatisfaction no longer exists, as of today when he's making

14  his plea.

15          So, in terms of Your Honor's questions about whether

16  or not he's satisfied with the representation of his Counsel,

17  I think the answer to that is yes.  And I just want to

18  establish it for the record.

19          THE COURT:  Okay.

20          You heard Mr. Lind.  Is that correct;

21  Mr. Pantoliano?

22          THE DEFENDANT:  Yes, Judge.

23          MR. LIND:  Thank you.

24          THE COURT:  All right.

25          And as I said before, all of these other

Victoria A. Torres Butler, CRR
Official Court Reporter

Proceedings                                    15

1   communications you have directed to the Court are just

2   communications.  I don't think I've looked at them, as I said

3   before, because I was dealing with you through your attorney.

4           Is there anything else?

5           MR. LIND:  No, Judge.

6           THE COURT:  Anything else?

7           MS. COHEN:  Nothing further from the Government,

8   Your Honor.

9           THE COURT:  With respect to Count 1 of the

10  indictment, 10-CR-068, I ask the defendant:

11          How do you plead; guilty or not guilty?

12          THE DEFENDANT:  Guilty.

13          THE COURT:  Are you pleading guilty voluntarily and

14  of your own free will?

15          THE DEFENDANT:  Yes.

16          THE COURT:  With respect to Count 2 of the

17  indictment, 10-CR-068:

18          How do you plead; guilty or not guilty?

19          THE DEFENDANT:  Guilty.

20          THE COURT:  And are you pleading guilty voluntarily

21  and of your own free will?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Okay.

24          It is the finding of the Court, in the case of

25  United States of America versus Pantoliano, that the defendant

Proceedings                    16

1    is fully competent and capable of entering an informed plea;

2           That the defendant is aware of the nature of the

3    charges and the consequences of his plea, and;

4           That his plea of guilty is knowing and is voluntary,

5    and;

6           Supported by an independent basis in fact containing

7    each of the essential elements of the offense.

8           The plea is, therefore, accepted and the defendant

9    is now adjudged guilty of those offenses.

10          Is there anything else?

11          MS. COHEN:  Nothing further from the Government.

12          MR. LIND:  No, Judge.

13          THE COURT:  Now, do we have a date, Ana?

14          THE COURTROOM DEPUTY:  October 28th at 9:30.

15          THE COURT:  Now, you will be sentenced on

16   October 28th, or some day thereafter.

17          And as I said before, any communications you have

18   with the Court will be through your lawyer.

19          THE DEFENDANT:  Yes.

20          MS. COHEN:  Thank you, Your Honor.

21          MR. LIND:  Thank you, Judge.

22          (Defendant remanded.)

23          (WHEREUPON, the proceedings were adjourned to

24   October 28th, 2011, at 9:30 a.m.)

25                        *   *   *